IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ANTHONY BLACKWELL, | ) |
|---|---|
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 08-374 ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff, Anthony Blackwell, seeks judicial review of a decision of Defendant, Commissioner of Social Security ("the Commissioner"), denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-433 and §§ 1381-1383f.[1] Presently before the Court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, Plaintiff's motion for summary judgment will be granted, and the

---

[1] The Social Security system provides two types of benefits based on an inability to engage in substantial gainful activity: the first type, SSI, provides benefits to disabled individuals who meet low-income requirements regardless of whether the individuals have ever worked or paid into the Social Security system, and the second type, DIB, provides benefits to disabled individuals who have paid into the Social Security system. Belcher v. Apfel, 56 F.Supp.2d 662 (S.D.W.V.1999). For purposes of DIB, Plaintiff met the insured status requirements of the Social Security Act through December 31, 2006. (R. 12). Thus, to be eligible for DIB, Plaintiff must establish disability before that date.

1

Commissioner's cross-motion for summary judgment will be denied.

## I. Background

Plaintiff filed applications for DIB and SSI on October 29, 2003, alleging disability since August 31, 2001.[2] (R. 81-83, 350-51). Following the denial of Plaintiff's applications for DIB and SSI, he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 54). At the hearing, which was held on September 8, 2005, Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. (R. 357-75).

On August 25, 2006, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI based on his conclusion that Plaintiff retained the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.[3] (R. 11-21). Plaintiff requested review of the ALJ's decision. (R. 8). However, the request was denied by the Appeals Council on February 26, 2008. (R. 5-7). This appeal followed.

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial

---

[2]Plaintiff previously filed applications for DIB and SSI on March 15, 2002. The applications were denied at the initial level of review on July 3, 2002, and Plaintiff did not pursue the applications any further.

[3]The Social Security Regulations define RFC as the most a claimant can still do despite his or her limitations. See 20 C.F.R. § 404.1545.

2

evidence, which has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It consists of something more than a mere scintilla, but something less than a preponderance. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). Even if the Court would have decided the case differently, it must accord deference to the Commissioner and affirm the findings and decision if supported by substantial evidence. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir.1986).

## II. Facts

Plaintiff was born on January 25, 1964. At the time of the hearing before the ALJ, he was 41 years old. (R. 361). Plaintiff, who attended special education classes, quit school in the 6th or 7th grade. During a lengthy period of incarceration,[4] Plaintiff obtained a General Equivalency Diploma ("GED") with the assistance of a tutor.[5] (R. 362-63, 367). In the past, Plaintiff has been employed as a construction worker and a dishwasher. (R. 364).

---

[4]When Plaintiff was 17 years old, he was sentenced to a term of imprisonment of 11 to 22 years for a series of robberies. (R. 219).

[5]Plaintiff testified that, despite being provided with a tutor, he required 6 or 7 years to attain the GED in prison (R. 367), and there is no evidence to the contradict this representation.

3

In an undated Disability Report completed by Plaintiff in connection with his current applications for DIB and SSI, Plaintiff indicated that he is disabled due to fallen arches in both feet, diabetes, stomach problems, a sleeping disorder and bipolar disorder. (R. 148). In addition, during the hearing before the ALJ, Plaintiff's counsel argued that Plaintiff is per se disabled because he meets an impairment listed in the Social Security Regulations due to his below average intelligence.[6]

The evidence that is relevant to this appeal consists of the following:[7] (1) a permanent school record which indicates that the Stanford-Binet Form L-M intelligence test was administered to Plaintiff in March 1975, when he was 11 years old, revealing an Intelligence Quotient ("IQ") of 70 (R. 162); (2) the report of a

---

[6]The impairments listed in the Social Security Regulations, which are divided into body systems, are set forth in Part 404, Subpart P, Appendix 1. An impairment or combination of impairments that meets or equals a listed impairment is deemed severe enough to preclude a claimant from engaging in gainful work without consideration of his age, education and work experience. See 20 C.F.R. §§ 404.1520(d) and 416.920(d); Bowen v. Yuckert, 482 U.S. 137 (1987)(If the impairment meets or equals a listed impairment, the claimant is conclusively presumed to be disabled). Thus, if Plaintiff meets a listed impairment as argued by counsel during the hearing before the ALJ, he is presumed disabled and should have been awarded disability benefits by the ALJ.

[7]Plaintiff's administrative file is lengthy, including medical and other evidence pertaining to both physical and mental impairments. Because Plaintiff's sole challenge to the ALJ's decision in this appeal relates to the ALJ's failure to find that he meets a listed impairment relating to mental retardation, a discussion of the evidence concerning his physical impairments is unnecessary.

4

physician employed by the Department of Corrections for the Commonwealth of Pennsylvania who evaluated Plaintiff in December 1992, in connection with Plaintiff's request for a furlough after serving 11 years in prison (R. 219); (3) an undated, unsigned report which apparently was prepared by a Disability Field Office employee following a face-to-face interview of Plaintiff in connection with his initial applications for DIB and SSI in early 1992 (R. 113-16); (4) the report of a psychiatric evaluation of Plaintiff by Brenda K. Freeman, M.D. on October 21, 2003 (R. 267-80); (5) the report of Marvin D. Wheeler, Ph.D., who performed an intellectual evaluation of Plaintiff on December 4, 2003, at the request of the Pennsylvania Bureau of Disability Determination (R. 286-91); and (6) a Mental RFC Assessment completed by a non-examining State agency psychological consultant on February 19, 2004 (R. 292-95).

### III. ALJ's Decision

When presented with a claim for disability benefits, an ALJ must follow a sequential evaluation process,[8] which was described by the United States Supreme Court in <u>Sullivan v. Zebley</u>, 493 U.S. 521 (1990), as follows:

> \* \* \*
>
> Pursuant to his statutory authority to implement the SSI Program, (footnote omitted) the Secretary has promulgated regulations creating a five-step test to determine whether

---

[8]<u>See</u> 20 C.F.R. § 404.1520(a)(4).

5

an *adult* claimant is disabled. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). (footnote omitted). The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. See 20 C.F.R. §§ 416.920(a) through (c)(1989). In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. See 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A)(1989). If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. § 416.920(d). If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits. §§ 416.920(e) and (f).

\* \* \*

493 U.S. at 525-26.

With respect to the ALJ's application of the five-step test in the present case, steps one and two were resolved in Plaintiff's favor; that is, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability and the medical evidence established that Plaintiff suffers from the severe impairments of major depressive disorder and diabetes mellitus. (R. 13-14). Turning to step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of any impairment listed in Part 404, Subpart P, Appendix 1 of the Social Security Regulations. (R. 15). As to step four, the ALJ found that Plaintiff could not perform his past relevant work

6

as a construction worker, which requires heavy exertion, or a dishwasher, which requires medium exertion, because Plaintiff's RFC was limited to sedentary work.[9] (R. 19). Finally, at step five, based on the testimony of the VE at the hearing, the ALJ found that considering Plaintiff's age, education, past work experience and RFC, there were a significant number of other jobs in the national economy which Plaintiff could perform, including the unskilled sedentary jobs of a bench assembler, an abrasive machine operator and a machine feeder/off-bearer. (R. 19-20).

## IV. Analysis

Plaintiff's sole challenge to the denial of his applications for DIB and SSI involves step three of the sequential evaluation process. Specifically, Plaintiff contends that the ALJ's evaluation should have ended at step three because the evidence establishes that he meets Listing 12.05C in the Social Security Regulations. After consideration, the Court agrees.[10]

---

[9]Prior to proceeding to step four, the ALJ addressed the issue of Plaintiff's RFC, concluding that Plaintiff retained the RFC to perform sedentary work with the following limitations: (a) no more than simple, routine, repetitive tasks; (b) no more than minimal contact with the public; and (c) no repetitive bending or the use of foot and pedal controls. (R. 15).

[10]Relatedly, Plaintiff argues the ALJ erred by failing to find that his intellectual functioning is a severe impairment and by failing to conduct an analysis in accordance with Social Security Ruling 96-9p, relating to the implications of a RFC for less than the full range of sedentary work. The Court agrees. However, because the Court concludes that the ALJ erred by failing to end the sequential evaluation process at step three, it is not necessary to reach these additional arguments.

7

Listing 12.05C provides:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> * * *

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Accordingly, to satisfy the requirements of Listing 12.05C, a claimant must (1) have a valid verbal, performance or full scale IQ of 60 through 70, (2) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and (3) show that the mental retardation was initially manifested during the developmental period, *i.e.*, before the age of 22. See Markle v. Barnhart, 324 F.3d 182 (3d Cir.2003). A review of the evidence of record in this case shows that Plaintiff meets these requirements.

With respect to the requirement of a valid verbal, performance or full scale IQ of 60 through 70 to meet Listing 12.05C, as part of his consultative intellectual evaluation of Plaintiff on December 4, 2003, Dr. Wheeler administered the

8

Wechsler Adult Intelligence Scale - Third Edition to Plaintiff. The test results assessed Plaintiff's verbal IQ as 60; his performance IQ as 62; and his full scale IQ as 57.[11] Thus, Plaintiff meets the first requirement for Listing 12.05C.

Turning to the requirement of "a physical or other mental impairment imposing an additional and significant work-related limitation of function" to meet Listing 12.05C, this phrase means that the other impairment is a "severe" impairment as defined in 20 C.F.R. §§ 404.1520(c) and 416.920(c). Markle, 324 F.3d at 188. Plaintiff also meets this requirement because the ALJ specifically found that he suffers from the severe impairments of major depressive disorder and diabetes mellitus which limit him

---

[11]In his evaluation report, Dr. Wheeler specifically stated that he considered Plaintiff's IQ scores to be valid, although he did note that the IQ scores were inconsistent with Plaintiff's attainment of a GED. However, there is no evidence that Dr. Wheeler was aware that Plaintiff required 6 or 7 years to attain the GED in prison, or that he required the assistance of a tutor. Dr. Wheeler also diagnosed Plaintiff with major depressive disorder, and he rated Plaintiff's score on the Global Assessment of Functioning Scale a 45, which denotes **"[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job). American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000, at 32-34 (bold face in original). Regarding the effect of Plaintiff's mental impairments on his ability to engage in work-related mental activities, Dr. Wheeler opined that Plaintiff was "markedly" limited in the following areas: (1) the ability to understand, remember and carry out detailed instructions; (2) the ability to respond appropriately to work pressures in a usual work setting; and (3) the ability to respond appropriately to changes in a routine work setting. (R. 289-91).

9

to a reduced range of sedentary work.

As to the third and final requirement to meet Listing 12.05C which requires that the initial manifestation of mental retardation occur before the age of 22, Plaintiff has submitted evidence that satisfies this requirement. Specifically, a permanent school record indicates that Plaintiff was administered the Stanford-Binet Form L-M intelligence test in March 1975, when he was 11 years old, and his IQ score was 70.

In considering and rejecting Plaintiff's IQ scores, the ALJ relied principally upon speculative inferences drawn from the record, which is impermissible.[12] Morales v. Apfel, 225 F.3d 310 (3d Cir.2000). Specifically, in rejecting Plaintiff's IQ scores, the ALJ made speculative inferences from the following evidence: (a) the prison physician who evaluated Plaintiff for purposes of a furlough request in December 1992, observed that he was mentally clear, his speech was coherent and relevant, he could

---

[12] Although an ALJ may reject a claimant's IQ scores, there must be substantial evidence of record to support a finding that the IQ scores are invalid. Markle, 324 F.3d at 187. See, e.g., Clark v. Apfel, 141 F.3d 1253 (8th Cir.1998)(HELD: The ALJ properly rejected the validity of the claimant's IQ scores where she had worked in the private sector, had a driver's license, was the primary caretaker of her young daughter and had completed the ninth grade without special education services); Popp v. Heckler, 779 F.2d 1497 (11th Cir.1986)(HELD: The ALJ did not have to accept IQ scores in the listing range for a claimant who had a two-year college degree, was enrolled in a third year of college and had a history of several skilled jobs including teaching algebra at a private school). In the present case, the record is devoid of such evidence.

10

read and write, and he "appears" to be of average intelligence
(R. 219); (b) Dr. Freeman, who conducted a psychiatric evaluation
of Plaintiff in October 2003, observed that he "appeared to have
an average fund of knowledge" (R. 268); (c) Plaintiff obtained a
GED;[13] (d) Plaintiff has a work history; and (e) an undated,
unsigned report of a purported face-to-face interview of
Plaintiff at a Disability Field Office in connection with his
initial applications for DIB and SSI indicates that the
interviewer observed no difficulty in Plaintiff's ability to
hear, read, breath, understand, speak coherently, concentrate,
talk, answer, sit, stand, walk, see, use his hands or write (R.
115).[14] Simply put, the decision of the Court of Appeals for the
Third Circuit in Markle, supra, dictates the conclusion that the
foregoing evidence does not constitute a sufficient basis for the
ALJ's rejection of Plaintiff's IQ scores.

In Markle, a claimant for disability benefits sought
judicial review of an ALJ's decision that he was not disabled.
In the adverse decision, the ALJ noted that the claimant's IQ

---

[13]Significantly, the ALJ fails to mention that Plaintiff attended special education classes while in school or that Plaintiff required 6 or 7 years to attain the GED while he was incarcerated, despite the assistance of a tutor.

[14]The Court notes that in a similar report completed in connection with Plaintiff's current applications for DIB and SSI which the ALJ does not mention, the interviewer, Heather Dobrozdravic, specifically notes that Plaintiff had difficulty with respect to coherency. In addition, she noted that Plaintiff "didn't fill out much of the 3368, so I helped him." (R. 120).

11

scores met the requirements of Listing 12.05C, but he rejected the scores because the claimant had completed the ninth grade, albeit in special education classes, and obtained a GED. Moreover, the claimant could read, write, subtract, add, had worked in the past, lived alone and independently, went out when necessary, shopped, walked around, visited friends and family, took care of his apartment, handled all his bills and used an ATM to access his bank account. Despite the claimant's attainment of a GED and his ability to engage in the various activities noted above, the Third Circuit Court of Appeals held that the ALJ erred in rejecting the claimant's IQ scores, specifically stating that these activities "are not inconsistent with qualifying mental retardation."[15] Id. at 187.

Similarly, Plaintiff's ability to read and write, the fact that several psychiatric evaluators have noted Plaintiff's "appearance" of average intelligence, Plaintiff's attainment of a GED in prison with the assistance of tutor over the course of 6 or 7 years, his past unskilled employment as a construction worker and dishwasher, and his ability to speak coherently are not inconsistent with his IQ scores showing mild mental

---

[15]The Third Circuit Court of Appeals noted in Markle that in a similar case, Brown v. Sec'y of HHS, 948 F.2d 268, 270 (6th Cir.1991), the Sixth Circuit Court of Appeals rejected the Commissioner's argument that a claimant's full scale IQ of 68 was inconsistent with, among other things, his driver's license and work history as a truck driver, sixth grade education and ability to make change, do laundry and clean his room. 324 F.3d at 187.

12

retardation.

Turning to the one additional piece of evidence relied upon to reject Plaintiff's IQ scores, the ALJ noted that Edward Zuckerman, Ph.D., a non-examining State agency psychological consultant who was asked to complete an assessment of Plaintiff's mental RFC in February 2004, also rejected the IQ scores obtained by Dr. Wheeler during his consultative evaluation of Plaintiff's intellectual functioning in December 2003. A review of Dr. Zuckerman's explanation of his assessment of Plaintiff's mental RFC, however, shows that he relied upon the identical facts that the ALJ impermissibly relied upon to reject Plaintiff's IQ scores; namely, Plaintiff's attainment of a GED, the report of the prison physician who noted in December 1992 that Plaintiff "appears to be of average intelligence," Plaintiff's work history, Plaintiff's writing ability, and Plaintiff's activities of daily living. (R. 294). Thus, Dr. Zuckerman's opinion cannot be construed as substantial evidence supporting the ALJ's rejection of Plaintiff's IQ scores.

## V. Conclusion

Based on the foregoing, the decision of the ALJ will be reversed and the case remanded to the Commissioner for a

13

calculation of the disability benefits to which Plaintiff is entitled.

_William L. Standish_
William L. Standish
United States District Judge

Date: November 6, 2008